**BERRY LAW PLLC**
745 FIFTH AVENUE, 5th FLOOR
NEW YORK, NEW YORK 10151
*Phone (212) 355-0777*
*Fax (212) 750-1371*

Eric W. Berry (NY)
*e-mail BerryLawPllc@gmail.com*

October 9, 2026

*via ECF*
Hon. Edgardo Ramos, U.S.D.J.
Southern District of New York
Foley Square Courthouse
40 Centre Street, Courtroom 619
New York, New York 10007

Re: *Adams v. Gold & Rosenblatt, LLC*, 26-cv-2419-er (S.D.N.Y)

Your Honor:

Defendants request leave to move pursuant to Rule 12(b)(6) for dismissal of the amended complaint (ECF 28). This is a consumer protection action based principally on the Fair Debt Collections Practices, General Business Law §349(a) and Judiciary Law §487, which provides treble damages for "egregious" attorney deceit or collusion. Adams alleges that the rent demands and housing court petitions defendants served upon him were inflated and misleading. Defendant Andrews 102 LLC owns the multiple dwelling where Adams resides, Defendant Residential Management (NY), Inc., is its managing agent. Defendants Gold & Rosenblatt, LLC, Randi Rosenblatt and Christine Panza are lawyers that represented Andrews 102 LLC in housing court proceedings.

A Rule 12(b)(6) dismissal is warranted since the substantive allegations in the amended complaint are refuted by the documents it attaches. Fed. R. Civ. P. 10(c); *see also: Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-147 (2d Cir. 2011) The complaint appends the housing court petitions which includes the relevant rent ledgers. The ledgers establish that the petitions were not deceptive or materially inaccurate. The last four petitions at issue did not claim more rent than was due. The first three included a claim for one additional prior months rent because the ledgers listed amounts actually due for additional security and dispossess notices that the lawyers misinterpreted as rent obligation. That error did not prejudice Mr. Adams who, at all relevant times, was always *thousands* of dollars behind in rent payments. Also, any claim based on the first three petitions, which were filed in 2021 and 2022, is time barred given the one-year limitations period applicable under the FDCPA and the three year period for GBL §349(a) and Judiciary Law claims.

A table showing the relevant information in the exhibits to the amended complaint about what Adams owed, and what he was sued for, follows:

| Petition (Date on Petition) | Amount Sued For | Ledger Balance Two Days Before Petition (Total) | Rent Portion of Balance and Other Items | Amount Sued For Less Rent Portion | Payments Collected During Pendency | Ledger Balance at End of Pendency |
|---|---|---|---|---|---|---|
| LT-305095-21/BX First Petition Ex. A (dated May 19, 2021) | $9,748.95 | May 17, 2021: $8,624.14 | $8,068.22 rent (5 months, Jan.–May 2021, plus $34.42), rest is security and dispossess costs | +$1,680.73 | $6,427.04 (4 payments, June 15 – Sept. 16, 2021) | Oct. 12, 2021: $8,954.14 |
| LT-311826-21/BX Second Petition Ex. C (dated Oct. 5, 2021) | $9,748.95 | Oct. 3, 2021: $8,824.14 | $8,068.22 (5 months, June–Oct. 2021, plus $34.42), rest is security and dispossess costs | +$1,680.73 | $8,033.80 (5 payments, Oct. 15, 2021 – Feb. 22, 2022) | Feb. 28, 2022: $7,547.38 |
| LT-305168-22/BX Third Petition Ex. E (dated Feb. 17, 2022) | $9,748.95 | Feb. 15, 2022: $9,024.14 | $8,068.22 (5 months, Oct. 2021–Feb. 2022, plus $34.42), rest is security and dispossess costs | +$1,680.73 | $42,709.29 (47 receipts, Feb. 22, 2022 – Jan. 25, 2024) | Jan. 31, 2024: $4,700.33 |
| LT-309504-24/BX Fourth Petition Ex. G (dated Mar. 4, 2024) | $5,222.11 | Mar. 2, 2024: $6,384.19 | $5,145.17 (3 months, Jan.–Mar. 2024, plus $93.59). | +$76.94 | $11,786.52 (14 receipts, Mar. 15 – Sept. 19, 2024) | Oct. 9, 2024: $6,606.69 |
| LT-335961-24/BX Fifth Petition Ex. I (dated Oct. 10, 2024) | $1,851.92 | Oct. 8, 2024: $6,606.69 | $5,145.67 (3 months, Aug.–Oct. 2024, plus $94.09) | −$3,293.75 | $5,051.58 (6 receipts, Oct. 24 – Dec. 19, 2024) | Jan. 13, 2025: $6,742.69 |
| LT-310503-25/BX Sixth Petition Ex. K (dated Mar. 25, 2025) | $1,851.92 | Mar. 23, 2025: $5,144.83 | $3,461.81 (2 months, Feb.–Mar. 2025 | −$1,609.89 | Through May 1, 2025: $1,683.86 (2 receipts, Apr. 28, 2025) | May 1, 2025 (last ledger entry): $6,964.69 |
| LT-319434-25/BX Seventh Petition Ex. M (dated June 17, 2025) | $3,535.78 | Not in record (ledger ends May 1, 2025 at $6,964.69) | Not in record | Not in record | Not in record | Not in record |
| LT-310012-26/BX Eighth Petition Ex. R (dated Mar. 18, 2026) | $3,535.78 | Not in record (ledger ends May 1, 2025 at $6,964.69) | Not in record (petition seeks Dec. 2025 $168.06 and Jan.–Feb. 2026 $1,683.86 each) | Not in record | Not in record | Not in record; dismissed July 30, 2026 as satisfied (Ex. V) |

These same defects were cited when defendants moved to dismiss Adams' original complaint. That motion was withdrawn in connection with an agreement that Adams would file an amendment, apparently in recognition of those defects.

The Amended Complaint attempted to salvage this lawsuit by turning it into an earmarking case. In particular, the case alleges that Adams earmarked his rental payments, which, if true,

would enable him to argue that the landlord defendants improperly applied his payments to the oldest receivable even though he "earmarked" them payments for later months. *3463 Third Avenue Realty, LLC v. Vazquez*, 2018 WL 2188476, *2 (Civ Ct. Bronx Co., Apr. 30, 2018).

The Amended Complaint *repeatedly* alleges that Adams earmarked his money orders. *E.g.*, ¶62 (regarding the fourth petition, and alleges Adams "had already paid all of the amounts alleged . . . with payments *earmarked* for the months sued for."); ¶70 (regarding the fifth petition, and alleging Adams "already [made] payments *earmarked* for the months sued for."); ¶81 (regarding the sixth petition, and alleging Adams "had already [made] payments *earmarked* for the months sued for."); ¶105, regarding the eighth petition, and alleging Adams "had already [made] payments *earmarked* for the months sued for[.]")[1]

Adams falsely claims the money orders were earmarked in a case *where he is accusing others of deceit*. Defendants have produced to Adams images of all money orders from 2024 forward, and *none* earmarks the payment for a particular month. *See* UCC §3-311(b)(1) (requiring a conspicuous notation on the instrument). The landlord defendants thus were permitted to apply the payments to the oldest receivable. *AMML Realty Corp. v. Alethia Townsend*, 2019 WL 3954309, *1 (City Ct., Mount Vernon, Aug. 20, 2019) ("a tenant's most recent rental payments may be applied to the oldest outstanding amounts due"); *Hughes v. Wagner*, 4 A.D.2d 980, 167 N.Y.S.2d 869, 870 (3d Dept. 1957) ("The proof disclosed that the payments of 1951 and 1952 were credited to arrearages so that the tenant was always behind in his rent. * * * . . . [I]t must be presumed that the payments would be credited against the oldest items due."); *accord: 712 Realty, LLC v. Poliard*, 82 Misc.3d 22, 24, 204 N.Y.S.3d 375, 376-377 (App. Term, 2nd, 11th and 13th Jud. Dist. 2024).

The money orders are integral to the amended complaint—though not appended to it, and may be cited in support of a Rule 12(b)(6) motion. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Thank you for your attention to this matter.

Respectfully submitted,

/s/Eric W. Berry
Eric W. Berry

cc: all counsel by NYSCEF

---

[1]The Eighth Petition alleges that $5,219.64 in rent in rent was outstanding. On a Rule 12(b)(6) motion, the Court can take judicial notice of the July 30, 2012 order of Judge Omer Shahid, which dismissed the petition *on the consent of the landlord defendants* following Adams' delivery of $5051.78 in *non-earmarked* money orders.