**AHMAD KESHAVARZ**
*Attorney at Law*

16 COURT STREET, #2600
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

November 20, 2026

**VIA ECF**
Hon. Edgardo Ramos, U.S.D.J.
United States District Court,
Southern District of New York
40 Foley Square, Courtroom 619
New York, NY 10007

**Re: Plaintiff's response opposing Defendants' October 9, 2026 letter requesting a pre-motion conference on a proposed motion to dismiss**
*Adams v. Gold & Rosenblatt LLC, et al.,* 1:26-cv-02419-ER

Dear Judge Ramos:

Plaintiff Kareem Adams opposes Defendants' letter for pre-motion conference, Dkt. No. 29, for leave to move to dismiss the First Amended Complaint ("FAC"), Dkt. No. 28. Plaintiff brought claims against Defendants Gold & Rosenblatt, LLC, a debt collection law firm, and Randi Rosenblatt, Esq. and Christine Panza, Esq., two attorneys at the firm (collectively "Attorney Defendants") for violating the Fair Debt Collection Practices Act ("FDCPA"), N.Y. Judiciary Law § 487; against Andrews 102 LLC, a landlord, and its property management company, Residential Management (NY), Inc. (collectively "Landlord Defendants"), as well as the Attorney Defendants, for violating GBL § 349 and for gross negligence.

Attorney Defendants, on behalf of Landlord Defendants, threatened suit and then brought non-payment petitions *eight* times over five years representing to Mr. Adams that he owed certain months of rent, which he did not, and attempting to evict him and his family based on these false claims. Filing and threatening to file a non-payment petition to collect rent not owed states the same causes of action against the law firm and the landlord as brought in the instant case. *See, e.g. Batista v. Edelman Schwartz PLLC*, No. 26-CV-2557 (JSR), -- F.Supp.3d --, 2026 WL 2905776 (S.D.N.Y. Sept. 28, 2026). Defendants' application must be denied.

First, and most simply, Defendants materially misrepresented to Mr. Adams in multiple rent demands and eight suits that he had not paid specific months of rent due shortly before the filing of the non-payment suit. This is materially deceptive because it "has the potential to affect the decision-making process of the least sophisticated" consumer. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). The least sophisticated consumer would know he had paid the last few months and thus would be challenged in how to either prevent the suit or dismiss the suit. In the months leading to each of the sixth, seventh, and eighth lawsuits, Mr. Adams made monthly payments of rent, only to be ambushed by Defendants' rent demand and a lawsuit claiming he owed rent from the same months he remembered making payments. For example, Mr. Adams made full rent payments in February through May 2025. FAC Ex. L (Dkt. No. 28-12) at 7, FAC Ex. N (Dkt. No. 28-14) at 6; see also Mr. Adams' proof of payments for the same months, FAC Ex. P (Dkt. No. 28-16) at 13-14. Yet, in May 2025, the same month Mr. Adams made full rent payment, Defendants sent him a rent demand claiming he owed rent for that month and three preceding months—including full rent for three months—and followed up with the seventh lawsuit. FAC Ex. M (Dkt. No. 28-13) at 1, 3.

What the Landlord Defendants' ledger might reflect is beside the point as the face of the suit and rent demand is deceptive. But the ledger is instructive to show intentional misconduct: they knew he did not owe the months of rent for which he was sued.

Here, the sixth Housing Court petition seeks $168.06 for January 2025 and $1,683.86 for February 2025. FAC Ex. K (Dkt. No. 28-11) at 1. Defendants' own ledger filed at discontinuance of the sixth lawsuit, however, shows a rent charge of $1,683.86 and corresponding payments totaling $1,683.86 for each of those months made in those months. FAC Ex. L (Dkt. No. 28-12) at 7. The seventh Housing Court petition seeks $168.06 for March 2025, $1,683.86 per month for April and May 2025. FAC Ex. M (Dkt. No. 28-13) at 1. However, Defendants' own ledger at discontinuance of the sixth lawsuit and Defendant Panza' revised rent breakdown provided during the seventh lawsuit show that the Landlord received full rent payments for those months. FAC Ex. L (Dkt. No. 28-12) at 7, FAC Ex. N (Dkt. No. 28-14) at 6.

Second, Defendants engaged in materially deceptive and misleading conduct by concealing the true age of alleged debts they were suing for that would prevent the least sophisticated tenant from realizing the affirmative defenses such as laches or statute of limitations. For example, laches would bar a landlord from maintaining a summary proceeding for possessory judgment for rent accrued. *Mariott v. Shaw*, 151 Misc.2d 938, 941-42 (Civ. Ct., Kings Co. 1991) (no possessory claim for rent more than three months old under the facts of the case). Suing or threatening to sue on a claim which the debt collector should know is "unavailable or unwinnable by reason of a legal bar such as the statute of limitations" is a violation of the FDCPA. *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014). Here, on the one hand, Defendants' rent ledgers and other documents show Mr. Adams's full rent payments corresponding to the months he was sued upon in the sixth, seventh, and eighth lawsuits. But when Defendants send rent demands and file nonpayment petitions, they suddenly apply Mr. Adams's payments to "the oldest receivable" and not the months payments are reflected in their ledgers. Dkt. No. 29 at 3. Even *if* the Court assumes that the ledgers correctly reflect all payments made by Mr. Adams, which they don't, and that Mr. Adams was "always *thousands* of dollars behind" as Defendants allege (Dkt. No. 29 at 1), Defendants concealed the true age of the alleged debt and the potential "unwinnable" nature of their claims or their request for possessory relief by disguising Mr. Adams's recent rent payments as payments for "the oldest receivable." That is a misleading conduct prohibited by the FDCPA.

In any event, Defendants rent demands and petitions make it difficult, if not impossible, for the least sophisticated tenant to understand what he actually owes or how he could correct any alleged default. A proper rent demand must inform the tenant of a good faith approximate the alleged debt due and the period for which it is due in order to permit timely cure and avoid unnecessary litigation. *See 542 Holding Corp. v. Prince Fashions, Inc.*, 46 A.D.3d 309, 311 (1st Dept. 2007); *Kulok v. Riddim Co.*, 185 Misc.2d 195, 196 (Civ. Ct., New York Co. 2000). Here, as shown above, the rent demands and petitions do not match Mr. Adams's own payment records. They also deviate from their own rent ledgers provided at the end of each of the first six lawsuits. FAC Ex. B, D, F, H, J, L (Dkt. Nos. 28-2, 4, 6, 8, 10, 12). The deficiencies and discrepancies in Defendants rent demands, petitions, and the ledgers, especially when compared against a tenant's own payment records, make it difficult for the least sophisticated tenant to figure out what rent he actually owes, for what time period he actually owes, or how he could correct the claimed default, if necessary at all.

Defendants do not address these points.[1] Instead, Defendants argue that the ledgers were not deceptive or materially inaccurate; so, whatever the ledgers show as due was due, and Housing Court petitions based on the rent ledgers were accurate. As shown above, however, Housing Court petitions deviate from the payment history reflected in the ledgers.[2] In addition, the ledgers were not accurate. Mr. Adams made payments every month he was sued for; he holds money order receipts proving it; and the ledgers fail to record all of his payments. FAC (Dkt. No. 28) ¶¶ 50, 54, 123, 133. Accepting the FAC's factual allegations as true and drawing all reasonable inference in Mr. Adams's favor, as the Court must on a Rule 12(b)(6) motion to dismiss, Defendants' argument resting on the accuracy of the landlord's rent ledgers fails.

Defendants' earmarking argument also fails. They argue that Mr. Adams did not earmark his payments with "conspicuous notation on the instrument" and thus they could apply them to the alleged oldest receivable. Dkt. No. 29 at 3. They concede that if Mr. Adams earmarked his rental payments, he would be able to argue that the landlord defendants improperly applied his payments to the oldest receivable, citing *3464 Third Avenue Realty LLC v. Vasquez*, 2018 WL 2188476, at *2 (Civ. Ct., Bronx, Co., Apr. 30, 2018). They cite to a UCC provision that New York never adopted as requiring Mr. Adams to put a conspicuous notation on payments for earmarking. This bright line conspicuous notation requirement, however, is precisely what New York courts have rejected. *A & E Tiebout Realty, LLC v. Johnson*, 23 Misc. 3d 1112(A) at *2 (Civ. Ct., Bronx Co. 2009), *aff'd*, 26 Misc. 3d 131(A) (App. Term, 1st Dept. 2010) (debtor's intention may be inferred from factors including the timing of the conduct).

Here, the timing and the amount of Mr. Adams's payments and Defendants' own ledgers show that the payments were earmarked for the months in which payments were made. The amount of Mr. Adams's payments corresponds to the amount of chargeable rent for the months in which payments were made. Defendants' ledgers indicate their general course of practice of applying Mr. Adams's payments to the months in which they were received. *See* FAC Ex. L (Dkt. No. 28-12) at FAC, Ex. N (Dkt. No. 28-14); Ex. P (Dkt. No. 28-16). FAC and its supporting documents clearly show that *both Mr. Adams and Defendants* intended to apply payments to the months in which they were made, and not to "the oldest receivable."

Taken together, FAC and its supporting papers, including Defendants' own ledgers, show that Defendants made materially false, deceptive, or misleading representations with regard to the alleged debts, violating the FDCPA and related state claims. For these reasons, Plaintiff respectfully submits that the proposed motion would be futile and that leave should be denied.

Plaintiff will move for leave to file a Second Amended Complaint (SAC). Less than a week after the filing of the SAC, Defendants sued Mr. Adams for the *ninth* time in a lawsuit for alleged arrears older than three years and rent Mr. Adams had already paid. The proposed SAC will add claims based on the ninth lawsuit; add pattern and practice evidence lawsuits against other tenants where Defendants also sued for months of rent that their own ledger shows were not owed; clarify that the conduct of the parties showed their intent to earmark rent payments regardless of what may have been written on the money order itself. At a minimum, Defendants'

---

[1] Defendants also argue that Judiciary Law § 487 claims have a three-year statute of limitations. Dkt. No. 29 at 1. But New York Court of Appeals has ruled that the claims are subject to the six-year statute of limitations in CPLR 213(1). *Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10, 15 (N.Y. 2014).

[2] There are other discrepancies between the ledgers and rent demands and petitions. Defendants admit that the first three Housing Court petitions each claimed about $1,680.73 more in rent than the ledger supported, because counsel "misinterpreted" security and dispossess charges as rent. Dkt. No. 29 at 1-2.

application should be denied without prejudice until there is a ruling on amending the complaint.

Sincerely,

/s/
Ahmad Keshavarz